## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LAMONT LEON KING,

    Plaintiff,

    v.

CPL. MITCHELL, et al.,

    Defendants.

Civil Action No.:  JRR-22-2886

## MEMORANDUM OPINION

Self-represented Plaintiff Lamont Leon King, who is currently incarcerated at Eastern Correctional Institution ("ECI"), filed his Amended Complaint in this civil rights action against Cpl. Michael Mitchell, Ofc. Orlando Thiess, Ofc. Ricku Ramesh, and the Salisbury City Police Department.[1]  ECF No. 5.  Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on April 24, 2023.  ECF No. 11.  Mr. King was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response to the motion could result in dismissal of the Amended Complaint.  ECF No. 13.  To date, Mr. King has not filed a response.  No hearing is necessary to determine the matters pending.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons explained below, the Court will grant Defendants' Motion.

### Background

### I.      Amended Complaint Allegations

Mr. King alleges that on December 25, 2021, at approximately 8:45 p.m., he was riding his bike through the Save-a-Lot parking lot in Salisbury, Maryland when Officer Mitchell, driving a police truck, struck him from behind.  ECF No. 5 at 5.  Mr. King was "slammed to the asphalt and

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full and correct names.

pinned under the bike face down causing temporary unconsciousness and multiple body injuries to [his] face, legs, back, hands, knees, left shoulder, and mouth breaking off one of my teeth." *Id.* Officer Mitchell held Mr. King at gunpoint while cursing at him and instructing him not to move or he would shoot him. *Id.* Mr. King pleaded to have the bike lifted off him, but Mitchell came down on him with his full body weight. *Id.* Two additional officers, Officers Ramesh and Thiess, also piled on top of Mr. King and struck him. *Id.* He tried to tell them he could not breathe but they only punched him harder. *Id.* Eventually, Mr. King was handcuffed and EMTs arrived to assess his injuries. *Id.* Although EMTs asked the officers to stop moving Mr. King, Mr. King alleges they continued "tossle-ing" him on the basis that they needed to search him. *Id.* at 5-6. When an EMT tried to cut off Mr. King's clothes, Officer Ramesh instead pulled Mr. King's pants and footwear causing Mr. King back and leg pain. *Id.* at 6. Mr. King was ultimately taken to the Emergency Room at Tidal Health. *Id.*

Mr. King suffered cervical neck pain, "a deformity of the left zygomatic arch," lacerations to the left side of his face and abrasions to the right side of his face. ECF No. 5 at 7, 18. Mr. King claims that he has permanent facial and body scars, a missing tooth, and continues to require physical therapy at ECI because he walks with a limp and has limited mobility as a result of the incident. *Id.* at 7, 9.

## II.    Defendants' Response

On December 25, 2021, at approximately 10:28 p.m., Cpl. Mitchell was dispatched to the Shore Stop located at 1140 Parsons Road in Salisbury, Maryland, to investigate a possible armed robbery. Mitchell Decl., ECF No. 11-2 at ¶ 3. Mitchell was given a description of the suspect and was told that the suspect departed the scene on a bicycle. *Id.* PFC Welgarz advised all officers that he had seen a person meeting the description provided of the suspect on Route 50 but lost

sight of him when he turned onto Penn Street. *Id.* at ¶ 4. Mitchell drove to the intersection of Route 50 and Delaware Avenue, where he observed the suspect, later identified as Mr. King, riding a bike heading east on the northern sidewalk of Route 50. *Id.* at ¶ 5. Mr. King started to pedal faster upon seeing Mitchell's patrol car, so Mitchell made a U-turn with the intention of making an investigatory stop. *Id.* Mr. King entered the Save-A-Lot parking lot through a break in the fence. *Id.* Mitchell reported Mr. King's movement to the other officers and followed him into the parking lot with his emergency lights activated. *Id.* at ¶ 6. Mr. King reversed his course and headed towards Cypress Street at which time Mitchell attempted to pass Mr. King on the right. *Id.* Mr. King "abruptly turned to his right, directly in front of [Mitchell's] vehicle," resulting in the front of the vehicle making contact with the rear tire of Mr. King's bicycle. *Id.*

Mitchell exited his vehicle with his gun drawn because he had been advised the suspect was armed with a handgun. ECF No. 11-2 at ¶ 7. Mitchell tried to free Mr. King's legs from under the bike; Mitchell ordered him to stay on the ground, but Mr. King stood and attempted to run away. *Id.* Mitchell "took him to the ground" and ordered Mr. King not to move. *Id.* Mitchell's body camera footage shows Mr. King dropping to the ground at Mitchell's order; Mitchell notifying the other officers of his location via radio; and Mr. King getting up on his hands and knees, at which time Mitchell threatens to shoot him multiple times, and forces him back onto the ground. Mitchell Body Camera, ECF No. 11-3 at 00:29-00:33; 00:33-00:36; 00:36-00:56.

Officers Ramesh and Thiess then arrived to assist Mitchell, who informs the other officers that Mr. King keeps trying to get up; Ramesh instructs him again to not get up and Mr. King responds that he is not getting up. ECF No. 11-3 at 1:01-1:05. The officers secured his left hand but Mr. King struggled against their attempt to secure his right hand despite their orders to comply. ECF No. 11-2 at ¶ 8. Officer Ramesh "put [his] weight on [Mr. King's] upper arm" to prevent

him from fleeing, but never struck him.  ECF No. 11-4 at ¶ 5.  Mr. King continued to try to escape.
*Id.*

      As the officers attempted to pull Mr. King's right hand behind his back, Mitchell "heard something metallic hit the pavement" and saw a small revolver under the right side of Mr. King's body.  ECF No. 11-2 at ¶ 8; Thiess Decl., ECF No. 11-6 at ¶ 6.  Mitchell yelled "gun" and "knocked" it out from under Mr. King.  ECF No. 11-2 at ¶ 8; ECF No. 11-3 at 1:26-1:29.  Thiess then pushed the gun out of Mr. King's reach and Officer Kissinger secured it.  ECF No. 11-2 at ¶ 8; ECF No. 11-6 at ¶ 6; *see* ECF No. 11-5 at 0:04-0:12.  Mr. King continued to struggle against being handcuffed.  ECF No. 11-2 at ¶ 9.  Mitchell, between expletives, continued to give orders for Mr. King to give them his hand; Mitchell then struck Mr. King several times in his right side. *Id.*; ECF No. 11-3 at 1:30-1:40; ECF No. 11-5 at 0:15-0:19.  While Mitchell was striking Mr. King, the officers finish handcuffing him.  ECF No. 11-2 at ¶ 9; ECF No. 11-3 at 1:40-1:44.  Thiess denies ever putting his full weight on Mr. King's body.  ECF No. 11-6 at ¶ 6.

      The officers called EMS due to the visible injuries Mr. King sustained to his head; he was transported to Tidal Health for treatment.  ECF No. 11-2 at ¶ 10; ECF No. 11-4 at ¶ 6.  While they waited for EMS to arrive, Ramesh searched Mr. King thoroughly, which took several minutes due to the multiple pairs of pants and jackets Mr. King was wearing.  ECF No. 11-4 at ¶ 6; ECF No. 11-5 at 0:30-6:42.  EMS arrived during the search and requested that Mr. King's jacket be removed; his handcuffs were removed briefly in order to do so.  ECF No. 11-4 at ¶ 7; ECF No. 11-5 at 6:43-8:45.  He was then moved to a stretcher after another search of his clothing.  ECF No. 11-4 at ¶ 8; ECF No. 11-5 at 9:30-12:25.  Ramesh accompanied Mr. King to the hospital.  ECF No. 11-4 at ¶ 9.

After Mr. King was detained, the officers also searched his bags, in which they found the items purportedly stolen from Shore Stop.  ECF No. 11-2 at ¶ 11.  Mitchell avers that security footage confirmed Mr. King was the person who robbed the Shore Stop.  *Id.*

No dash camera footage exists from Mitchell's vehicle because he failed to turn on the front emergency lights which activate the vehicle's dash camera.  ECF No. 11-2 at ¶ 12.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original).  The Court must view the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*) (citation and quotation omitted); *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Mr. King was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

The Court is mindful that Mr. King is a self-represented litigant. A federal court must liberally construe pleadings and papers filed by *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction, however, does not mean a court can ignore a clear failure to allege sufficient facts to set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d

387, 391 (4th Cir.1990).  Similarly, a court shall not assume the existence of a genuine dispute of material fact where none exists. FED. R. CIV. P. 56(c).

## Discussion

Defendants assert that the Complaint should be dismissed or summary judgment should be granted in their favor because (1) Mr. King failed to comply with the notice provisions in the Local Government Tort Claims Act, (2) Salisbury Police Department is not an entity subject to suit, (3) the Officers did not violate Mr. King's Fourth Amendment rights, and (4) the Officers are entitled to qualified immunity.[2]

### I.    Salisbury Police Department

Defendants argue that the Salisbury Police Department is not subject to suit because it is not an independent legal entity.  ECF No. 11-1 at 8-9.  The Court agrees.  The Salisbury Police Department is part of a municipality, the City of Salisbury, which would be the proper party.  *See Savage v. Mayor & City Council*, No. CCB-08-3200, 2009 WL 1119087, at *3 (D. Md. April 22, 2009) (citing *Revene v. Charles County Comm's,* 882 F.2d 870, 874 (4th Cir. 1989); *Hines v. French,* 852 A.2d 1047, 1068 (Md. App. 2004) (explaining that local police departments are agents of the governing locality and should not be viewed as separate legal entities); *cf. Chin v. City of Baltimore,* 241 F. Supp. 2d 546, 547 n.1 (D. Md. 2003) (following *Baltimore Police Dep't v. Cherkes,* 780 A.2d 410, 422 (Md. App. 2001) in assuming without deciding that the Baltimore City Police Department, a state agency, was a suable entity)).  Therefore, the Salisbury Police Department will be dismissed.

---

[2] The Court construes the claim alleged in the Amended Complaint as a Fourth Amendment excessive force claim brought pursuant to 42 U.S.C. § 1983.  As Mr. King has not raised a state law claim, the Court need not address Defendants' argument concerning Maryland's Local Government Tort Claims Act.

## II.      Excessive Force

The Fourth Amendment protects citizens from "unreasonable seizures," and thus prohibits the use of excessive force by police officers "to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).  Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *see also Cty. of Los Angeles v. Mendez*, __ U.S. __, 137 S.Ct. 1539, 1546-47 (2017) (instructing that "[t]he framework for analyzing excessive force claims is set out in *Graham*.").  Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Mendez*, 137 S.Ct. at 1546 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure." *Id.* (quoting *Garner*, 471 U.S. at 8-9). Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  *Graham*, 490 U.S. at 396. The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'" *Mendez*, 137 S.Ct. at 1546 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)).  The Constitution "does not require police to gamble with their lives in the face of a serious threat of harm." *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996)).  Further, "'the right to make an arrest' 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 192 (4th Cir.

2018) (quoting *Graham*, 490 U.S. at 396; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

      First, Defendants contest that the collision between Mitchell's vehicle and Mr. King and his bike constitutes a seizure under the Fourth Amendment.  ECF No. 11-1 at 10-11.  Defendants assert that because Mitchell had no intention to strike Mr. King with his vehicle, Mitchell did not seize Mr. King and thus could not have used excessive force against him.  *Id.*  The Fourth Circuit explained what constitutes a seizure under the Fourth Amendment in *Shultz v. Braga*, 455 F.3d 470, 480-81 (4th Cir. 2006):

> In sum, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement," such as in the case of an innocent passerby who is injured when he is inadvertently struck by the force employed, "nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement," such as in the case of a fleeing felon who is unknowingly and unintentionally stopped by an officer. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original). Rather, a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 597 (emphasis omitted). It is not necessary that the seizure be effectuated exactly as intended when the force is applied, but the person must nonetheless have been "stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599.

Here, the facts are undisputed that Mitchell did not intend to strike Mr. King with his vehicle while he was in pursuit.  Mitchell attests that he was attempting to pass Mr. King and the video evidence shows that Mr. King swerved into the path of Mitchell's vehicle during the chase; and Mr. King has failed to respond to the Motion or otherwise to generate a factual dispute on this point.  As such, there is no evidence on which a jury could reasonably conclude that Mitchell intended to strike Mr. King (or his bike) with his vehicle such that a seizure of Mr. King's person occurred as a result; therefore, there is no basis on which a jury or court could conclude that Mr. King was

subject to an unreasonable seizure violative of the Fourth Amendment.  Therefore, Mitchell is entitled to summary judgment on this claim.

Second, Defendants argue that none of them used excessive force while handcuffing Mr. King because all of the *Graham* factors weigh in favor of the limited force used by Defendants. ECF No. 11-1 at 11-13.  Here, again, Mr. King fails to generate a dispute of fact.  At the time force was applied, Mr. King was suspected of armed robbery; therefore, the severity of the crime and the risk of harm to officers and the public weigh in favor of Defendants, as officers reasonably operated under the presumption that the identified armed robbery suspect (Mr. King) was in possession of a deadly weapon and was capable and willing to use it in to effect a crime.  Further, it is undisputed that after the collision, Mr. King stood up and started to move away from Mitchell before he was taken to the ground; upon the arrival of Ramesh and Thiess, Mitchell advised them that Mr. King kept trying to get up.  As such, it is undisputed that at the time the Defendants converged on Mr. King, it appeared he was trying to evade arrest.  Subsequently, Mr. King struggled against being handcuffed until the gun was discovered and removed from his possession. It was therefore objectively reasonable (to ensure the safety of all and the public), for the Defendant officers to use the weight of their bodies to control the situation until Mr. King was handcuffed. Plaintiff has failed to generate a dispute of fact that this was the extent of the force used by Ramesh and/or Thiess.  They are therefore entitled to summary judgment in their favor.[3]

Remaining is Mr. King's claim that he was punched multiple times.  Based on the record before the Court, it is undisputed that only Mitchell struck Mr. King during the arrest, and Mr.

---

[3] To the extent Mr. King alleges that excessive force was used against him while Ramesh was searching him, Mr. King fails to raise a triable issue on this, as nothing before the court could reasonably be construed or interpreted to support this conclusion.  The video footage shows that Ramesh conducted an extensive search of Mr. King, first while he was seated on the ground and later while he was standing before being situated on the stretcher.  At no time does it appear that Ramesh used any force against Mr. King during the search of Mr. King's numerous layers of clothing; nor did EMS personnel indicate Ramesh should not move Mr. King during the search in light of his injuries.

King fails to generate a triable issue on this point.  It is undisputed that the officers struggled with Mr. King to get control of his right arm in order to handcuff him even after the gun was secured; and Mitchell struck Mr. King in the right side of his abdomen while yelling for Mr. King to give them his arm.  While the Court finds that the explicit and vitriolic manner in which Mitchell spoke to Mr. King during the incident was unnecessary, the record does not support a conclusion that his actions were objectively unreasonable.  Mr. King finally complied with the officers' attempts to handcuff him as Mitchell was striking him.  In view of the undisputed material facts, it was objectively reasonable for Mitchell to suspect that Mr. King may be further armed and thus his immediate compliance was necessary to subdue the risk of safety to the officers and the public.  Accordingly, Mitchell is also entitled to summary judgment.

## Conclusion

For the foregoing reasons, Defendants' Motion is granted.[4]  The Amended Complaint is dismissed as to the Salisbury Police Department.  Judgment is granted in favor of Defendants Ramesh, Thiess, and Mitchell.  A separate Order follows.

February 1, 2024                                           /S/

_____
Julie R. Rubin
United States District Judge

---

[4] Because the Court will grant Defendants' Motion on these grounds, the Court need not address Defendants' qualified immunity argument.